UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| KENNETH JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:11-CV-356-TLS |
| | ) | |
| LAKE COUNTY SHERIFF'S | ) | |
| DEPARTMENT; ROGELIO DOMINGUEZ, | ) | |
| and JOHN BUNICH, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Kenneth Jones was employed by the Lake County Sheriff's Department from the beginning of 2008 until October 2012. The Plaintiff has sued his former employer, including the Sheriffs who were holding office during the relevant time periods. He alleges that his male supervisor at the Lake County Jail, where the Plaintiff worked as a Corrections Officer, subjected him to a sexually hostile work environment by making sexually offensive comments, innuendoes, and gestures, and that his employer did not take action to correct or stop this behavior. He also maintains that his employer retaliated against him after he filed an EEOC Complaint about his supervisor's conduct. The Defendants have moved for summary judgment on all the Plaintiff's claims.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in her

favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* N.D. Ind. L.R. 56-1(a) (stating that the movant must provide a "'Statement of Material Facts' that identifies the facts that the moving party contends are not genuinely disputed"). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed in Rule 56 to designate specific material facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000); N.D. Ind. L.R. 56-1(b) (directing that a response in opposition to a motion for summary judgment must include "a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary").

Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *see Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (noting the often stated proposition that "summary judgment cannot be used to resolve swearing contests between litigants"). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. "Irrelevant or unnecessary facts do not deter summary judgment, even when in dispute." *Harney v. Speedway SuperAmerica, LLC,* 526 F.3d 1099, 1104 (7th Cir. 2008).

**STATEMENT OF FACTS**

**A.     Evidentiary Disputes**

The Plaintiff has filed a Motion to Strike Defendants' Exhibits Filed in Support of Their Motion for Summary Judgment [ECF No. 38], challenging the admissibility of all but three of the Defendants' exhibits. The Plaintiff asserts that four documents offered by the Defendants as evidence of the Lake County Sheriff Department's sexual harassment policy contain hearsay and have not been authenticated. In response to the Plaintiff's challenge, the Defendants submit the Affidavit of Mark Purevich, the records keeper for the Lake County Sheriff's Department who is familiar with the business records maintained by the Department. Purevich states that the Department's records were created at or near the time by, or from information transmitted by, someone with knowledge, and maintained by the Department in the course of its regularly conducted activity. He further states that the exhibits at issue "accurately represent, state, and declare the sexual harassment policy that was in effect during" the Plaintiff's employment. (Purevich Aff. ¶ 4, ECF No. 42-1.) To authenticate the policy documents, the Defendants were required to "produce evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), and they have done so. Accordingly, the Court may consider the policy. *See Smith v. City of Chi.*, 242 F.3d 737, 741 (7th Cir. 2001) (noting that for purposes of summary judgment, "a court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits" (quotation marks omitted)); *Woods v. City of Chi.*, 234 F.3d 979, 988 (7th Cir. 2000) (discussing admission of business records under Federal Rule of Evidence 803(6) when they have a sufficient indicia of trustworthiness based on the affidavit of a person who would be qualified to introduce the

3

records as evidence at trial). Moreover, the Defendants do not appear to be offering the policy for the truth of the matters asserted within. *See* Fed. R. Evid. 801 (defining hearsay as an out of court statement offered "in evidence to prove the truth of the matter asserted in the statement"). The documents, which describe prohibited workplace activity and the procedures for reporting such activity, are intended to show the existence of the policy itself, and the truth or falsity of the statements within the policy are not relevant.[1]

Purevich was likewise able to authenticate other exhibits challenged by the Plaintiff—his training records, payroll records, and personnel records—and they will not be stricken.

The final exhibit the Plaintiff maintains should be stricken from the summary judgment record begins as follows: "After gathering information and interviewing Officer Jones regarding the E.E.O.C. complaint filed, the following conclusions have been made." (Ex. 18, ECF No. 30-18.) D.W. Travis is identified within the text of the document as its author. The Plaintiff argues that the report should be stricken because it contains legal conclusions and hearsay, and has not been authenticated. Purvich states in his Affidavit that the report is a record of the Lake County Sheriff's Department investigation that was conducted after it received his EEOC Complaint. With regard to the statements contained within the document, the Court declines, at this juncture, to dissect each statement. Whether the Defendant's investigatory findings and conclusions were accurate and complete, or are the subject of legitimate dispute, is not a determination the Court needs to make unless they ultimately go to a material issue of fact that may preclude summary

---

[1] The Plaintiff's hearsay argument is, in fact, that the "documents purport to be statements made to prove that the Lake County Sheriff's Department . . . has a sexual harassment policy and what the sexual harassment policy is." (Pl.'s Motion to Strike ¶ 3, ECF No. 38.) This does not describe hearsay.

judgment. For the reasons stated, the Court will deny the Plaintiff's Motion to Strike.[2]

The Defendants filed their own Motion to Strike [ECF No. 41], directed at certain of the Plaintiff's interrogatory answers, on grounds that they contain inadmissible hearsay. The Defendants challenge over ten pages of interrogatory responses. The Court, rather than address each statement, will sift through the responses and consider admissibility under the applicable federal rules. As the Court addresses the legal issues presented by the Defendants' Motion for Summary Judgment and analyzes the facts under the governing procedural and substantive law, it will determine whether there are any irrelevant, inadmissible, conclusory, or speculative assertions that should be disregarded, and then handle them accordingly. Consequently, there is no need to strike any part of the Plaintiff's Interrogatory Answers, and the Court will deny the Defendants' Motion to Strike.

**B.     Statement of Facts**

The following facts are supported by citations to admissible materials in the record, and will be expanded upon in the Analysis section:

The Lake County Sheriff's Department hired the Plaintiff in January 2008. The Plaintiff worked on "B-Turn" at the Lake County Jail where he was supervised by Sergeant Tim Hogan. In March 2010, Hogan became the Booking Supervisor. In April 2010, the Plaintiff moved from B-turn to Booking.[3] According to the Plaintiff, Hogan regularly made inappropriate and lewd

---

[2] Ultimately, very little of the Defendants' materials, including the investigation report, impact the outcome of this case on summary judgment.

[3] The Defendants maintain that the Plaintiff requested the move to Booking despite the fact that Hogan was the supervisor, but they do not designate any evidence in support of this assertion. The personnel documents show only the effective date of the move. The statement that the Plaintiff requested

comments to other officers within the Plaintiff's hearing. He cites to an incident in early 2010 when Hogan made reference to another officer about having sex with the officer's wife, and to incidents in May 2010: he asked another officer to smell his breath because "it smells like your wife's pussy;" he told officers that the officer with the biggest breasts could go to lunch first and then told a female officer this meant she would be going last, and; he told the Plaintiff to keep his hands off "my property" in reference to the Plaintiff touching a female officer's arm. The Plaintiff learned from another employee that Hogan made other comments about, or directed to, female officers.

The Plaintiff recounts two incidents where Hogan made comments directly to the Plaintiff. In fall 2009, Hogan telephoned the Plaintiff and said "you know you are a butt lick," and when the Plaintiff asked what Hogan wanted he told him to get his ass down to Hogan's office. Hogan did not give the Plaintiff permission to come inside the office, but made him wait outside. Another officer arrived and was able to go directly into the office. During the exchange, Hogan called the Plaintiff "dumb, dumb." On June 24, 2010, Hogan repeatedly asked the Plaintiff whether he "wanted" an EMT named Will Smith, while the Plaintiff was trying to have a conversation with Smith. The Plaintiff assured Hogan that he was not a homosexual and continued talking with Smith.

The Plaintiff filed a Charge of Discrimination with the EEOC on June 28, 2010. The Department later received the Charge and conducted an investigation. Based on its findings, the Department did not take any disciplinary action against Hogan. The Plaintiff continued to work

---

the move can be found in the Defendants' report of its investigation into the Plaintiff's EEOC Complaint, but since the Defendants ask the Court to consider the statement for its truth, it is inadmissible hearsay.

for the Department in different divisions until October 3, 2012, when he submitted a letter of resignation, expressing gratitude for his employment and explaining that he was moving to a position in the private sector that would allow him to further advance his skills and increase his yearly income.

## ANALYSIS

**A.     Hostile Work Environment**

The Plaintiff's lawsuit invokes Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* An employer violates Title VII if it is responsible for a hostile work environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). "'Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult.'" *Johnson v. City of Fort Wayne*, 91 F.3d 922, 938 (7th Cir. 1996) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). To avoid summary judgment on a hostile work environment claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements: (1) whether the work environment was both subjectively and objectively offensive; (2) whether the plaintiff's gender was the cause of the harassment; (3) whether the conduct was severe or pervasive; and (4) whether there was a basis for employer liability. *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014); *see also Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 693 (7th Cir. 2001) (stating that, for purposes of summary judgment, the court "must decide whether a reasonable trier of fact could find that plaintiff was harassed, that she was harassed because of her sex, and that the conduct was severe or pervasive enough to create a subjectively and

7

objectively hostile work environment").

The Plaintiff's hostile work environment claim does not survive summary judgment because he has not presented evidence that his gender was the cause of the harassment, or that it was sufficiently severe or pervasive enough to create an objectively hostile work environment.

The Plaintiff's hostile work environment claim is based on the following incidents: In fall 2009, Hogan called him a "butt lick" and demanded he come to his office. Hogan then made him wait outside his office in the hallway for more than ten minutes instead of allowing him in the office, and called him "dumb dumb." In early 2010, the Plaintiff heard Hogan make a comment to a fellow officer about having sex with his wife. In May 2010, the Plaintiff observed Hogan's conversation with Officer Dave May, in which Hogan told May to come smell his breath, exhaled and said, "it smells like your wife's pussy." Around this same time, Hogan told officers that whoever had the biggest breasts would go to lunch first, followed by "hey Jansky, that means you are last." The Plaintiff observed that Jansky, a women, was humiliated by the comment and he told Hogan "that is enough of that." Also in May 2010, the Plaintiff touched another officer on the arm and Hogan told him to keep his hands off his "property." The female officer responded sarcastically "ya, right."

On June 24, 2010, the Plaintiff was talking to EMT Will Smith. Hogan was also in the vicinity and asked the Plaintiff whether he wanted Smith because he was acting so friendly toward him. The Plaintiff, interpreting this to be a sexual reference, responded "I don't think so" and continued to talk with Smith. Hogan continued the badgering, saying "oh, come on, you know you want to have him" and asking the Plaintiff if he was getting a "nipple hard on." The Plaintiff responded that he was pretty sure he wasn't a homosexual and continued his

8

conversation. Hogan interrupted a third time to express his belief that the Plaintiff wanted EMT Smith. The Plaintiff said he didn't want to hear it, and went back to his conversation.

In addition to the incidents he observed, the Plaintiff learned from another employee that Hogan made other comments to or about female employees, and claims that he realized other employees were experiencing the same harassment he was experiencing. The Plaintiff also complains that Hogan made his work difficult in other ways, such as making him walk to booking to receive his paycheck when normal procedure was for it to be sent through a "tube" to the jail lobby.

By identifying Hogan's sexual and lewd statements, and otherwise showing how Hogan treated him poorly, the Plaintiff believes that he has presented evidence from which a jury could conclude that he suffered a hostile work environment in violation of Title VII. This misunderstands the law as it relates to the evidence in this case and the protections guaranteed by Title VII, which only prohibits harassment because of a protected characteristic—in this case, sex. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Several of the Plaintiff's complaints about Hogan's behavior lack any sexual or gender component, character, or overtones, and the Plaintiff makes no attempt to explain how these actions were directed at him because of his gender. *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (stating that complained of conduct in a Title VII case must have a sexual character or purpose). For example, the Plaintiff complains that Hogan made him wait outside his office just to mess with him, and made him go to booking to receive his paycheck instead of having it delivered. Moreover, these incidents, in combination with the others identified by the Plaintiff in this litigation, reveal Hogan to be an equal opportunity harasser. He made vulgar and offensive

9

comments to male and female officers alike. But because Title VII only prohibits "discrimination" because of sex, "inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000). "Title VII does not cover the 'equal opportunity' . . . harasser, then, because such a person is not *discriminating* on the basis of sex. He is not treating one sex better (or worse) than the other; he is treating both sexes the same (albeit badly)." *Id.*; *see also Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 976 (7th Cir. 2004) (plaintiff did not establish a genuine issue of material fact on whether she was harassed because of her gender where her superiors' vulgar language showed them to be crude individuals who treated everyone poorly, including men).

The Plaintiff incorrectly assumes that he need only show that Hogan was often offensive and lewd to present his claim to a jury. Although it is true that same sex harassment is actionable under Title VII, it is only actionable "to the extent it occurs 'because of' the plaintiff's sex." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1007 (7th Cir. 1999) (citing 42 U.S.C. § 2000e-2(a) and *Oncale*, 523 U.S. at 75). "[W]orkplace harassment . . . is [not] automatically discrimination because of sex merely because the words used have sexual content or connotations." *Oncale*, 523 U.S. at 80. Without some proof that the Plaintiff would not have been treated in the same way had he been a women, he has not established a violation of Title VII. *Shepherd*, 168 F.3d at 1009.

Even if the Plaintiff could clear the hurdle concerning Hogan's *indiscriminate* treatment of men and women, the statements Hogan actually directed to the Plaintiff were not sufficiently severe or pervasive to create an objectively hostile work environment. Hogan called him a butt

lick in 2009 and, in 2010, suggested the Plaintiff was sexually attracted to a male EMT. The circumstances relevant to determining whether a reasonable person would find an environment hostile or abusive include: the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with the employee's work performance. *Hildebrandt v. Ill. Dep't of Nat'l Res.*, 347 F.3d 1014, 1033 (7th Cir. 2003). The comments directed at the Plaintiff were nothing more than the occasional and isolated banter of a coarse and boorish worker. Hogan's actions were not physically threatening or humiliating. Nor is there any evidence that either of the comments the Plaintiff identified unreasonably interfered with the Plaintiff's work performance or detracted from his ability to perform his job. *See Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) (noting that the key question in the severe or pervasive inquiry is whether the conduct was so severe or pervasive that it altered the conditions of the employment). Name calling, like that experienced during the incident in 2009, is certainly unprofessional and unpleasant, but Title VII is not a code of "general civility." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Hogan interrupted the Plaintiff three times to interject rude comments when he was talking to an EMT, but by the Plaintiff's own description it was a cordial conversation, not one with work-related implications. Each time, the Plaintiff returned to the conversation.

The addition of the comments Hogan made to others in the Plaintiff's presence do not place this case over the line into the realm of an objectively hostile environment. The Plaintiff claims that he was "emotional [sic] injured and very upset with anxiety" when he heard Hogan make a reference to having sex with another officer's wife. (Interr. Resp., ECF No. 37-1 at 15.)

11

The Court finds that a reasonable person in the Plaintiff's position would not consider the environment hostile or abusive on the basis of this behavior within the entire context of the workplace. Again, the offensive statement (which appears to be Hogan's idea of humor) did not physically threaten or humiliate the Plaintiff, and, indeed was not even directed at him or to his gender. Likewise, neither the Plaintiff nor his gender was the subject of Hogan's comment to a female employee that she would not be going to lunch first on the criteria that the person with the biggest breasts would go first. *See McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 624 (7th Cir. 2004) (recognizing that the impact of harassment directed at others is not as great as harassment directed at the individual).

Even when Hogan's conduct is viewed in a light most favorable to the Plaintiff, a jury could not find that the Plaintiff endured a hostile work environment on the basis of his gender, and the Defendants are entitled to judgment as a matter of law.

**B.     Retaliation Claim**

The Defendants correctly note that the Plaintiff did not make a claim for retaliation in his EEOC Charge, and that any claims of retaliation that occurred prior to filing his Charge are barred. *See Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011). However, the only incidents of retaliation alleged by the Plaintiff occurred after he filed his EEOC Charge, as they were purportedly a response to his Charge. Those incidents may be considered. *See McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 482 (7th Cir. 1996).

Retaliation in violation of Title VII may be established on summary judgment through either the direct or indirect methods of proof. *Weber v. Univs. Research Ass'n, Inc.*, 621 F.3d

589, 592 (7th Cir. 2010). The Plaintiff has not identified which method he is using. He simply claims that he has made a prima facie showing that he was retaliated against after he filed the EEOC Charge, and believes that a jury should determine whether his inability to join the SORT team or his move to a department with less opportunity to work overtime were the result of filing the Charge of Discrimination or something else.

Under either method, the Plaintiff would be required to show that he suffered a materially adverse action. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1106 (7th Cir. 2012) (direct method); *Harper v. C.R. England, Inc.*, 687 F.3d 297, 309 (7th Cir. 2012) (indirect, burden-shifting approach). The Plaintiff identifies being moved from the Booking department and being denied placement on the SORT team as retaliatory acts, but he fails to designate any evidence to support an inference that these actions were materially adverse. An action is materially adverse for purposes of retaliation if it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted). Although being moved to a department with lower pay may dissuade a reasonable worker from making a charge of discrimination, the Plaintiff does not designate evidence in support of the conclusory statement in his Memorandum that overtime was less frequent in B-turn, or designate evidence that he took advantage of overtime while he was in the Booking department. The Plaintiff's designated evidence is utterly devoid of any evidence concerning the differences in pay between the two departments. This is problematic because "a lateral transfer without a loss of job benefits does not constitute an adverse employment action." *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 702 (7th Cir.2001). The evidence is similarly lacking with respect to the SORT team and what kind

13

of benefits that team enjoyed. "At summary judgment, . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact," *U.S. v. 5443 Suffield TeRieth-Rileyace, Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010), and the Plaintiff's general assertions about the benefits of respective departments or teams are not supported by any citation to admissible evidence. These "[b]are allegations not supported by specific facts are insufficient in opposing a motion for summary judgment." *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Posey v. Skyline Corp*., 702 F.2d 102, 105 (7th Cir. 1983); *see also Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir. 2004) (noting that the court could not consider the plaintiff's conclusion that employees in his protected group were treated more harshly, asked to do certain work more often, and written up for reasons that employees outside the protected group were not because he did not set forth any times, dates, or places that led to and supported his conclusions); *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Conclusory allegations, unsupported by specific facts, will not suffice" to show a genuine dispute for trial.).

The Plaintiff asserts that it was retaliatory for Hogan to require him to write a report on June 29, 2010, about a work-related incident, that other employees did not have to write reports, and that Hogan suggested he would not be paid for the time he spent writing the report. This purported retaliatory act is too lacking in detail to support a conclusion that it well might have dissuaded a reasonable worker from complaining. The Plaintiff's evidence does not suggest that writing the report was onerous, or that the employer lacked good reason for requesting the report. And while the Plaintiff argues that Hogan "inferred" he would not be paid, the

14

Interrogatory Answer he designates in support of the statement recounts only that when the Plaintiff asked for a "comp slip," Hogan replied that he would have to speak to the Deputy Warden to see how the time would be handled. Ultimately, the Plaintiff does not present any evidence that earned pay was actually withheld. Finally, there is no evidence that Hogan was aware, on June 29 when he requested that the Plaintiff write the report, that the Plaintiff had filed an EEOC Charge just one day earlier, on June 28. Retaliation "calls for evidence of adverse employment action linked to a protected activity, not just evidence of problematic hostility." *Hutt v. Solvay Pharm., Inc.*, — F.3d —, 2014 WL 3033126, at *5, No. 13-1481 (7th Cir. July 7, 2014).

The Plaintiff also maintains that he suffered retaliation when Hogan spread rumors that the Plaintiff filed the EEOC Complaint because he was mad about Hogan's stance on the number of hours that should constitute a shift at the jail. There is no evidence that these statements caused the Plaintiff any actual injury. *See Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) (finding that calling an employee a trouble maker, a cry baby, and a spoiled child was not materially adverse); *Dunn v. Washington Cnty. Hosp.*, 429 F.3d 689, 690 (7th Cir. 2005) (finding that a doctor who asked a nurse in a "nasty and uncivil tone" to withdraw a harassment complaint she filed against him and told her that "paybacks are hell," but took no other action against her, did not cause the nurse any actual injury and thus the comments would not have dissuaded a reasonable person from complaining).

In addition to failing to show that he suffered materially adverse actions, the Plaintiff has not put forth evidence from which a reasonable jury could find that the Defendants' employment decisions were made out of a desire to retaliate against the Plaintiff for filing the EEOC Charge.

*See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2417, 2528 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."). The Plaintiff has not introduced into the record a similarly-situated comparator who had not filed an EEOC charge and who was treated more favorably, a necessary requirement for a prima facie case under the indirect method. *See Harper*, 687 F.3d at 309. Under the direct method, the Plaintiff has not provided either direct or circumstantial evidence that the assignments he received, or did not receive, were the result of his EEOC Complaint. "'The mere fact that one event preceded another does nothing to prove that the first event caused the second. . . . [O]ther circumstances must also be present which reasonably suggest that the two events are somehow related to one another.'" *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.*, 277 F.3d 882, 895 (7th Cir. 2001) (quoting *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000)). *See also Scaife v. Cook Cnty.*, 446 F.3d 735, 742 (7th Cir. 2006) (noting that under ordinary circumstances, "[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is *other* evidence that supports the inference of a causal link") (internal quotation marks omitted, emphasis added); *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) ("[W]e remind that mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."). The Plaintiff claims in his Memorandum that he "was told by other employees that the reason he wasn't being put back in booking to work overtime and the reason he wasn't allowed to join the SORT team was because of the Charge that he filed." (Pl.'s Mem. 11, ECF No. 37). The Plaintiff does not cite to particular parts

of materials in the record in support of this claim, as required by Rule 56. Moreover, the statement is inadmissible hearsay, as it relays what another person told the Plaintiff, and the Plaintiff asks the Court to consider the statement as proof that the reason he was not put in booking or allowed to join SORT was because he filed an EEOC Charge. The Court notes that an employee can create an inference of retaliation if he presents evidence that he was the more qualified candidate for a position, *see, e.g., Stephens v. Erickson*, 569 F.3d 779, 788 (7th Cir. 2009), but the Plaintiff makes no attempt to differentiate his credentials from any other employee who sought placement on the SORT team or within a particular department.

The circumstantial evidence, viewed in totality, does not suggest that it was "more likely than not" that the Plaintiff "was subjected to" an adverse employment action because of his protected activity, *Hobgood v. Illinois*, 731 F.3d 635, 644 (7th Cir. 2013), and his retaliation claim fails as a matter of law.

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [ECF No. 28] is GRANTED. The Motions to Strike [ECF Nos. 38 & 41] are DENIED. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on August 11, 2014.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION